UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOUNPONE MORISATH,

                    Petitioner,                    Case No. C26-1364-SKV

        v.

BRUCE SCOTT, *et al*.,                    ORDER GRANTING PETITION FOR
                                          WRIT OF HABEAS CORPUS

                    Respondents.

        Petitioner Bounpone Morisath is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody and various forms of injunctive relief.  Dkt. 1.  Petitioner submitted in support of his petition the declarations of habeas counsel Matthew B. Hayes (Dkt. 2), and Thao Ha, Ph.D. (Dkt. 3).  Also pending before the Court is Petitioner's motion for a temporary restraining order ("TRO") (Dkt. 9), which is supported by the declarations of habeas counsel Jennifer Pasquarella (Dkt. 10), and immigration counsel Nicolas A. Olano (Dkt. 11).

        Respondents have filed a return opposing Petitioner's request for federal habeas relief and his motion for TRO (Dkt. 13), together with supporting declarations from ICE Deportation

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 1

Officer Harold Britt, Jr. (Dkt. 14), and Respondents' counsel Alixandria K. Morris (Dkt. 15). Petitioner has filed a traverse in response to Respondents' return (Dkt. 16), supported by a supplemental declaration from counsel Matthew B. Hayes (Dkt. 17).

The Court having reviewed the parties' submissions, and the governing law, GRANTS in part Petitioner's petition for writ of habeas corpus (Dkt. 1) and DENIES Petitioner's motion for TRO (Dkt. 9).

## I.    BACKGROUND

Petitioner was born in Laos in 1975 and entered the United States as a refugee in 1980. *See* Dkt. 1 at 5-6; Dkt. 14, ¶ 3.  He was accorded lawful permanent resident ("LPR") status in 1984.  Dkt. 1 at 6; Dkt. 14, ¶ 4.  Petitioner avers that he is not now a citizen or national of Laos because, according to Lao nationality law, he forfeited nationality when he migrated to another country and resided there for more than seven years.  *See* Dkt. 1 at 6; Dkt. 2, Ex. A.

In 1995, Petitioner was convicted in Alaska of assault in the third degree and misconduct involving weapons in the third degree, and he was sentenced to two years' incarceration with 18 months suspended.  Dkt. 2, Ex. B; Dkt. 14, ¶ 5.  In July 1995, the legacy Immigration and Naturalization Service ("INS") issued an Order to Show Cause and Notice of Hearing charging as Petitioner as deportable for having been convicted of an offense involving firearms.  Dkt. 1 at 6; Dkt. 14, ¶ 6.  In February 1996, an immigration judge ("IJ") in Anchorage, Alaska, ordered Petitioner be removed to Laos.  Dkt. 1 at 7; Dkt. 2, Ex. D; Dkt. 14, ¶ 7; Dkt. 15, Ex. 3.  Petitioner appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"), and the BIA dismissed the appeal.  Dkt. 14, ¶ 8.  It appears Petitioner's removal order became final in December 1997.  *See* Dkt. 15, Ex. 4 at 5, 6.  Petitioner was released on an Order of Supervision

("OSUP") in December 2000 because he could not be removed to Laos.[1]  *See* Dkt. 1 at 7; Dkt. 15, Ex. 4 at 6.

On January 8, 2026, the Lao People's Democratic Republic ("PDR") issued a "Laissez-Passer" for Petitioner, a document that allows an individual to enter the PDR for a single journey only and is valid for 90-days from the date of issuance.  *See* Dkt. 3, ¶ 14; Dkt. 15, Ex. 6. Officer Britt avers that ICE's Office of Enforcement and Removal Operations ("ERO") did not obtain the document until February 11, 2026.  Dkt. 14, Decl., ¶ 11.

On February 17, 2026, the Department of Homeland Security ("DHS") sent Petitioner a "Call-In Letter" directing him to report to ICE's Seattle Field Office on March 10, 2026, "to discuss [his] immigration case."  Dkt. 2, Ex. K.  On February 23, 2026, Petitioner's immigration counsel filed a motion to reopen Petitioner's removal proceedings with the BIA (*id.*, Ex. L; Dkt. 11, ¶ 3), and the following day counsel filed with the BIA an emergency motion for stay of removal (Dkt. 2, Ex. M; Dkt. 11, ¶ 7).  Petitioner argues in those motions that his removal order is invalid because the Alaska weapons statute upon which his removal order is based does not provide a predicate for removal.  *See* Dkt. 2, Exs. L, M; *see also* Dkt. 1 at 9-11.  Both motions remain pending before the BIA at this time.  Dkt. 1 at 9.

On March 10, 2026, Petitioner reported as directed to ICE's Seattle Field Office where he was arrested, placed into a holding cell for several hours, and then transported to NWIPC.  Dkt. 1 at 8; Dkt. 15, Ex. 2 at 2.  On the day of Petitioner's arrest, ICE issued a Notice of Revocation of Release which indicated that Petitioner's release had been revoked because ICE had "the ability

[1] Respondents' materials are inconsistent regarding the date Petitioner was released on the OSUP. Officer Britt avers in his declaration that Petitioner was released on September 20, 1999.  Dkt. 14, ¶ 10. The Record of Deportable/Inadmissible Alien (Form I-213) completed at the time of Petitioner's recent arrest indicates he was released on September 13, 1999.  *See* Dkt. 15, Ex. 2 at 2.  Respondents' counsel has produced copies of three OSUPs, the first one dated December 13, 2000, with subsequent OSUPs dated January 3, 2008, and April 2017.  *See id.*, Ex. 4.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 3

and means to effectuate [his] removal." Dkt. 15, Ex. 5. The Notice further indicated that ICE had obtained a travel document and scheduled his removal to take place not later than April 7, 2026. *See id.*, Exs. 5, 6. Petitioner asserts in his verified petition that ICE refused to provide him a copy of any travel document, despite his own requests and follow-up requests from his family. Dkt. 1 at 8.

Officer Britt avers that ICE conducted an informal interview with Petitioner on the day of his arrest, affording him an opportunity to respond to the reasons for revocation of his OSUP. Dkt. 14, ¶ 12. Petitioner disputes this, asserting in his petition that ICE at no point conducted an informal interview or otherwise complied with the applicable regulations in effectuating his re-detention. Dkt. 1 at 8. Respondents have produced a copy of an informal interview form which purports to show that an Officer Gray conducted an interview of Petitioner on March 10, 2026. Dkt. 15, Ex. 5 at 4.

On or about March 20, 2026, Petitioner's immigration counsel filed a renewed motion for an emergency stay with the BIA and on April 4, 2026, counsel filed a motion to expedite adjudication of Petitioner's pending motion to reopen. *See* Dkt. 11, ¶¶ 9-14.

On April 27, 2026, ICE issued a Notice of Imminent Removal advising that it was in possession of a travel document and expected to affect Petitioner's removal sometime during May 2026, though the travel document had by then expired. Dkt. 15, Ex. 7. Respondents filed a notice in this action the following day advising of their intent to remove Petitioner to Laos no earlier than 48 hours from the date and time of the filing of the notice. Dkt. 8. On the same day, April 28, 2026, Petitioner's immigration counsel emailed the BIA's emergency stay line and

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 4

requested emergency attention to Petitioner's pending stay request.[2]  Dkt. 11, ¶ 15.  On April 29, 2026, Petitioner filed a motion for TRO in this action, and this Court provisionally granted the motion on the same date, pending full briefing on both the motion and Petitioner's petition.  *See* Dkts. 9-12.

Officer Britt avers that ERO had scheduled Petitioner to be removed on May 5, 2026, before a stay of removal was ordered.  Dkt. 14, ¶ 13.  Officer Britt acknowledges that the travel document obtained for Petitioner recently expired, but states that "ERO expects that Petitioner can be removed to Laos in the normal course with the recently expired travel document or with a potential replacement travel document once there is no order in place prohibiting removal."  *Id.*

On May 4, 2026, Petitioner filed in the Ninth Circuit Court of Appeals two petitions for review, both of which were accompanied by motions to stay Petitioner's removal.  Dkt. 17, ¶ 2, Ex. 1.  A temporary stay of removal is currently in effect in the Ninth Circuit.  *See id.*, ¶ 3, Ex. 1.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that

---

[2] It does not appear from the record that the BIA has acted upon, or acknowledged in any way, Petitioner's various requests for expedited or emergency attention.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 5

its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   DISCUSSION

Petitioner identifies four claims in his petition: (1) his re-detention without pre-deprivation notice and a hearing violated his procedural due process rights under the Fifth Amendment; (2) his continued detention violates his substantive due process rights under the Fifth Amendment; (3) his re-detention violated applicable regulations and the Administrative Procedure Act ("APA"); and (4) his "punitive banishment" to Laos would violate his rights under the Fifth and Eighth Amendments. Dkt. 1 at 25-29.

### A.   Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The Court applies the *Mathews* test here.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 6

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests"). The Supreme Court has also repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025). Thus, when Petitioner was released under an OSUP over two decades ago, he acquired a liberty interest protected by the Due Process Clause. Petitioner's actions since release – getting married, raising a child, purchasing a home, becoming a valued member of the community, and complying with the conditions of his release – demonstrate his reasonable reliance on, and the weight of, that interest.

Respondents appear to acknowledge that a noncitizen has a liberty interest in freedom from immigration detention, but they argue this interest is reduced when a noncitizen is subject to a final, executable order of removal. Dkt. 13 at 10. Respondents further argue that because ICE did not detain Petitioner until it had secured a travel document for his removal to Laos, his interest in freedom from detention "is significantly reduced." *Id.* at 11.

Notably, however, after taking Petitioner into custody, Respondents allowed the travel document they had obtained for Petitioner to expire without effectuating his removal. Thus, though Petitioner is subject to a final order of removal, albeit one that is under challenge, there is some question as to whether the order was, in fact, executable at the time Petitioner was re-detained. Moreover, even assuming Petitioner's liberty interest was reduced given

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 7

circumstances as they existed at the time he was taken into custody, that interest is not zero. The record makes clear that ICE's revocation of Petitioner's OSUP inflicted a "grievous loss" on him, thereby depriving him of a valuable private interest that is protected by the Due Process Clause. *See Morrissey*, 408 U.S. at 482. The Court finds, based on the record evidence, that the first *Mathews* factor favors Petitioner.

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Respondents maintain there is a limited risk here that Petitioner's re-detention is an erroneous deprivation of his liberty, citing again to the fact that ICE did not detain him until it had secured a travel document and arguing that detaining him to facilitate his removal is not erroneous, even absent a hearing. Dkt. 13 at 11. Respondents further argue that the existing procedures governing OSUP revocation are constitutionally sufficient, and that Petitioner was provided all the process he was due under the regulations. *Id.* at 12.

The applicable regulation provides that ICE may revoke a noncitizen's release if the noncitizen violates the conditions of their release, or if changed circumstances create a significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. §§ 241.13(i)(1), (i)(2). The regulation further provides that "[u]pon revocation" of the noncitizen's release, the individual must be notified of the reasons for revocation and afforded "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation" and "submit any evidence or information" in opposition. 8 C.F.R. § 241.13(i)(3). The regulation also requires a "revocation custody review" that includes "an evaluation of any

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 8

contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

It is unclear from the record whether Petitioner received the Notice of Revocation of Release which was prepared on the day of his arrest and set forth the reasons for revocation of his OSUP.  The copy of the document provided by Respondents indicates that it was served on Petitioner and that Petitioner refused to sign the Proof of Service portion of the form.  Dkt. 15, Ex. 5 at 2.  However, Petitioner avers in his verified petition that ICE agents refused to provide him with "a copy of any travel document *or other paperwork*."  Dkt. 1 at 8 (emphasis added). The Court cannot discern from this averment whether it includes the notice advising Petitioner of the reasons for revocation.

Petitioner's averments regarding the informal interview required by the regulations are more clear.  Petitioner specifically states in his verified petition that he has yet to be provided the informal interview or opportunity to respond with evidence contemplated by the regulations. Dkt. 1 at 8.  Respondents assert in response that ICE conducted an informal interview with Petitioner on the day of his arrest and afforded him an opportunity to respond to the reasons for revocation of his OSUP.  Dkt. 13 at 5.  Respondents cite to Officer Britt's declaration in which he states that an informal interview was conducted (Dkt. 14, ¶ 12), and to an internal interview form purporting to show that another deportation officer, Officer Gray, conducted the informal interview (Dkt. 15, Ex. 5 at 4).

With respect to Officer Britt, nothing in the record demonstrates that he has personal knowledge of the purported informal interview.  It appears instead that Officer Britt simply gleaned this information from his review of Petitioner's case records.  *See* Dkt. 14, ¶ 2.  As to the informal interview form supplied by Respondents, the form contains Petitioner's identifying

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 9

information, Officer Gray's name, the date of the purported interview, some markings indicating that Petitioner provided no written statement nor any documents, and Officer Gray's signature. Dkt. 15, Ex. 5.  The form contains no details regarding any discussion Officer Gray may have had with Petitioner, nor does it record any oral response Petitioner may have given.  *Id.*  Even assuming Petitioner declined to offer an oral response, the form would presumably reflect that fact, assuming an interview was actually conducted.

In addition, the Court finds it notable that the Form I-213, which was also completed by Officer Gray on the day of Petitioner's arrest, makes no mention of an informal interview having been conducted and it erroneously reports that Petitioner is not married and has no children, basic information which presumably would have been accurately recorded had Officer Gray spoken with Petitioner.  *See* Dkt. 15, Ex. 2.  In sum, Respondents' evidence is insufficient to overcome Petitioner's averment that no informal interview was conducted and that no opportunity to respond with evidence was afforded him, as required by the regulations.

However, even assuming ICE complied with the regulations and provided Petitioner notice and an informal interview at the time of his re-detention, such minimal procedures, in the circumstances of this case, were insufficient to afford Petitioner a meaningful opportunity to respond.  Three weeks in advance of Petitioner's re-detention, ICE sent him a letter directing him to report to "discuss" his case.  Dkt. 2, Ex. K.  The letter made no mention of the fact that ICE had obtained a travel document for him or that it was making preparations for his removal.  *See id.*  By the time Petitioner was scheduled to report, he had presented a motion to reopen to the BIA challenging the validity of his removal order and raising issues concerning the availability of relief from removal.  Dkt. 2, Ex. L.  Issues such as these, which go to the likelihood Petitioner will ultimately be removed, are relevant to the discretionary decision to re-detain when re-

detention is based on changed circumstances and the foreseeability of removal.  Petitioner had no opportunity to raise these issues prior to his re-detention, and it appears he had little capacity to do so following his re-detention.[3]

While the regulations, as written, appear to afford some process to a noncitizen who is re-detained, the record suggests they were completely ineffectual in the circumstances of this case. Additional process in the form of pre-deprivation notice and an opportunity to be heard before a neutral decisionmaker would have decreased the risk of an erroneous deprivation here.  The second *Mathews* factor therefore favors Petitioner.

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  Respondents argue that the government "has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal."  Dkt. 13 at 11 (citing *Saelee v. Bondi*, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026).)  Respondents further argue that the government's interest is even stronger where it has shown that removal is likely to occur in the reasonably foreseeable future.  *Id.* at 12.

While the government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community," *Zadvydas*, 533 U.S. at 690, Respondents identify no concrete way in which providing a short, pre-deprivation hearing before revoking an existing OSUP would materially impede those interests, especially in a case such as this.  There appears to be no dispute that Petitioner has, for the past 27 years, shown up

---

[3] Nothing in the record explains how Petitioner might have reasonably been expected to marshal and present evidence necessary to challenge the revocation of his OSUP *after* he was taken into custody given that he had no advance notice his OSUP would be revoked and he would be detained.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 11

for his required check-ins and otherwise complied with the conditions of his OSUP, and there is no evidence in the record suggesting that Petitioner, after more than a quarter century of compliance, had become a flight risk.

The Court observes as well that custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Respondents have not identified any exigent circumstances that would have made a pre-deprivation process impracticable in this case. The Court therefore finds that the third *Mathews* factor favors Petitioner.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Respondents' re-detention of Petitioner without providing him "an opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333, violates the due process protections afforded him by the Constitution. As Petitioner has established that he is in custody in violation of the Constitution, he is entitled to habeas relief under § 2241. Petitioner must therefore be immediately released from custody.

### B.      Additional Claims

Because the Court deems Petitioner's challenge to his re-detention dispositive, the Court does not address Petitioner's indefinite detention and APA claims. The Court also declines to address Petitioner's claim alleging punitive banishment as he requests no relief specific to that claim (*see* Dkt. 1 at 29-30), and it appears that any request for relief relative to this claim would exceed this Court's jurisdiction. Petitioner was ordered removed to Laos in February 1996, and the removal order is currently final. *See* Dkt. 15, Ex. 3. Any request in this federal habeas action

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 12

to restrict or overturn that order would fall within the constraints imposed by 8 U.S.C. § 1252(g), which provides that courts lack jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." The Ninth Circuit has held that challenges to the executive's exercise of discretion to execute a removal order are barred under § 1252(g). *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022). Any relief related to Petitioner's order of removal is properly pursued in the immigration courts. *See id.*

## C.   Injunctive Relief

In addition to seeking release from confinement, Petitioner also seeks more specific relief relating to his re-detention claim, including that the government be prohibited from: (1) re-detaining him without notice and a hearing before this Court; and (2) re-detaining him unless he violates the conditions of his order of supervision, or Respondents obtain an unexpired travel document from Laos, provide the document to Petitioner and his counsel, and give him two months to leave on his own. *Id*. Petitioner fails to demonstrate that the expansive relief requested is necessary or appropriate under the circumstances presented here. Petitioner may, of course, pursue additional relief if warranted by future events.

Petitioner, by way of his motion for TRO, seeks an order enjoining the government from removing him from the country or this jurisdiction until this Court rules on his habeas petition and the BIA rules on his motions to reopen and to stay his removal. *See* Dkt. 9. The first part of this request is moot as the instant Order constitutes a final ruling on Petitioner's habeas petition. The second part of Petitioner's request falls under the jurisdictional bar of § 1252(g), as discussed above. While Petitioner is understandably concerned about the absence of any ruling from the BIA on his motion to stay his removal, the Court observes that the Ninth Circuit has

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 13

entered a stay which it appears will remain in effect until at least early July, thus providing a degree of the protection Petitioner seeks here. *See* Dkt. 17, Ex. 1.

### IV.    CONCLUSION

Based on the foregoing, the Court ORDERS:

(1)    Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part.

(2)    Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order on conditions consistent with those in place at the time of his re-detention.

(3)    Respondents shall file a notice with the Court confirming Petitioner's release **within 48 hours**.

(4)    Petitioner's motion for a temporary restraining order (Dkt. 9) is DENIED.

(5)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 21st day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 14